**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAMUEL B. TRICKEY,<br><br>               Plaintiff,<br><br>     v.<br><br>EMIL J. BROLICK, JANET HILL, JOSEPH A. LEVATO, MICHELLE J. MATHEWS-SPRADLIN, PETER W. MAY, MATTHEW PELTZ, NELSON PELTZ, TODD A. PENEGOR, PETER H. ROTHSCHILD, and ARTHUR B. WINKLEBLACK.<br><br>               Defendants,<br><br>  -and-<br><br><br>THE WENDY'S COMPANY,<br><br>             Nominal Defendant | Civil Action No. 16-CV-7789 (PAE) |

## VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Samuel B. Trickey ("Plaintiff"), by his undersigned counsel, alleges upon information and belief, except for his own acts, which allegations are based upon personal knowledge, as follows:

### NATURE OF THE ACTION

1.    Plaintiff brings this action derivatively on behalf of nominal defendant The Wendy's Company ("Wendy's" or the "Company") for harm to the Company resulting from breaches of fiduciary duties by the Company's Board of Directors

{00226464;1 }

(the "Board") related to Wendy's failure to join the Fair Food Program (the "FFP") that its competitors have long since joined.[1]

2.    As set forth in detail below, the FFP works with food retailers to effect wage increases and ensure humane working conditions for the workers who pick fruits and vegetables on participating farms.

3.    The success of the FFP is due in large part to the widespread participation of major food retailers including McDonalds, Burger King, Subway, Chipotle Mexican Grill, Yum! Brands, Inc. (Yum! Brands owns the restaurant brands KFC, Pizza Hut, and Taco Bell),[2] and grocery stores such as Walmart, Trader Joe's, Whole Foods Market, Fresh Market, and Ahold USA (owner of Giant Food Stores, Stop & Shop, and Martin's).[3] Despite participation by all its major competitors and minimal cost to the Company to join the FFP, Wendy's has refused to join in the effort—the last major fast food chain to do so. Wendy's is thus flouting what has become a de facto industry norm. The need for the FFP emerged as the result of farm labor exploitation and cases of slavery in Florida's

---

[1] Fair Food Program, *Participating Buyers*, http://www.fairfoodprogram.org/partners/ (last accessed Jan. 5, 2017).

[2] Yum! Brands, Inc., *Building Three Global, Iconic Brands People Trust and Champion*, http://www.yum.com/company/ (last accessed Jan. 5, 2017).

[3] *See* FN 1.

tomato fields.[4] Farm workers were subject to physical abuse, involuntary confinement, abductions, debt bondage, and starvation wages.[5]

4.      By joining the FFP, food retailers agree to pay a small price premium on the fresh market produce they purchase and to require their farm suppliers to implement a human-rights-based Code of Conduct. These efforts have been tremendously successful, resulting in humane working conditions and significant wage increases for farmworkers.[6]

5.      As a direct result of Wendy's failure to join the FFP, the Company's goodwill and reputation have declined, causing the Company to become the subject of boycotts and protests across the country.[7]

---

[4] Holly Burkhalter, *Fair Food Program Helps End the Use of Slavery in the Tomato Fields*, Wash. Post, Sept. 2, 2012, *available at* https://www.washingtonpost.com/opinions/fair-food-program-helps-end-the-use-of-slavery-in-the-tomato-fields/2012/09/02/788f1a1a-f39c-11e1-892d-bc92fee603a7_story.html?utm_term=.d40c11715100 (last accessed Jan. 5, 2017).

[5] *Id.*

[6] In 2015, the Coalition of Immokalee Workers was awarded the Presidential Medal for Extraordinary Efforts in Combatting Modern-Day Slavery in recognition of the resounding success of its Fair Food Program. Additionally, the Fair Food Program has been touted as "the best workplace-monitoring program" in the US in the *New York Times*, and "one of the great human rights success stories of our day" in the *Washington Post*. *See* Steven Greenhouse, *In Florida Tomato Fields, a Penny Buys Progress*, N.Y. Times, April 24, 2014, *available at* http://www.nytimes.com/2014/04/25/business/in-florida-tomato-fields-a-penny-buys-progress.html?_r=3 (last accessed Jan. 5, 2017); and FN4 *supra*.

[7] For example, both the Presbyterian Church (U.S.A.) and the United Church of Christ, representing millions of followers, have endorsed the national Wendy's boycott. *See* http://www.ciw-online.org/blog/2016/05/ucc-endorses-boycott/ (last accessed Jan. 5, 2017).

6.      This loss of goodwill has caused substantial harm to the Company's economic performance and irreparably damaged the Company's reputation in the business community.

7.      For these reasons, Plaintiff hereby brings this shareholder derivative action on Wendy's behalf, and the action should be allowed to proceed.

## PARTIES

8.      Plaintiff is and has been, at all relevant times, the owner of shares of Wendy's common stock. Plaintiff is a citizen of Florida.

9.      Nominal Defendant Wendy's is a publicly-held corporation organized and existing under the laws of the State of Delaware. The Company maintains its principle executive offices at One Dave Thomas Boulevard, Dublin, Ohio 43017. Wendy's is a quick-service hamburger company with over 6,500 restaurants across the United States and other countries.

10.     Defendant Todd A. Penegor ("Penegor") has been President and Chief Executive Officer ("CEO") of Wendy's since May 2016. Penegor previously served as Executive Vice President and Chief Financial Officer ("CFO") from September 2013 to May 2016. Upon information and belief, Penegor is a citizen of Ohio.

11.     Defendant Emil J. Brolick ("Brolick") has been a member of the Board since September 2011. Brolick served as the Company's CEO from

September 2011 to May 2016. Upon information and belief, Brolick is a citizen of Ohio.

12.    Defendant Janet Hill ("Hill") has been a member of the Board since September 2008. Upon information and belief, Hill is a citizen of Washington, D.C.

13.    Defendant Joseph A. Levato ("Levato") has been a member of the Board since June 1996. Levato served as the Company's executive Vice President and CFO from April 1993 to August 1996. Upon information and belief, Levato is a citizen of New Jersey.

14.    Defendant Michelle J. Mathews-Spradlin ("Mathews-Spradlin") has been a member of the Board since February 2015. Upon information and belief, Mathews-Spradlin is a citizen of California.

15.    Defendant Peter W. May ("May") has been a member of the Board since April 1993 and has served as the Company's executive Vice Chairman since June 2007. May served as the Company's President and CEO from April 1993 to June 2007. Upon information and belief, May is a citizen of New York.

16.    Defendant Matthew Peltz has been a member of the Board since December 2015. Mr. Peltz is the son of Defendant Nelson Peltz, who is also a member of the Board. Upon information and belief, Matthew Peltz is a citizen of New York.

17.    Defendant Nelson Peltz has been a member of the Board since April 1993 and has served as the Company's non-executive Chairman since June 2007. Mr. Peltz served as the Company's Chairman and CEO from April 1993 to June 2007. Mr. Peltz is the father of Matthew Peltz, who is also a member of the Board. Upon information and belief, Nelson Peltz is a citizen of New York.

18.    Defendant Peter H. Rothschild ("Rothschild") has been a member of the Board since May 2010. Upon information and belief, Rothschild is a citizen of New York.

19.    Defendant Arthur B. Winkleblack ("Winkleblack") has been a member of the Board since May 2016. Upon information and belief, Winkleblack is a citizen of Nevada.

20.    Defendants Penegor, Brolick, Hill, Levato, Mathews-Spradlin, May, Matthew Peltz, Nelson Peltz, Rothschild, and Winkleblack are collectively referred to as the "Individual Defendants" and/or the "Board."

## JURISDICTION AND VENUE

21.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(3) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs. This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

22.     Venue is proper in this district under 28 U.S.C. § 1401 which allows a stockholder filing a civil action on behalf of his or her corporation to prosecute it in any judicial district where the corporation might have sued the same defendants. Moreover, because a substantial portion of the transactions and wrongs complained of herein, including several of the Defendants' primary participation in the wrongful acts detailed herein, occurred in this district. One or more of the Defendants either resides in or maintains executive offices in this district, and Defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

## DEFENDANTS' FIDUCIARY DUTIES

23.     By reason of their positions as officers, directors, and/or fiduciaries of Wendy's and because of their ability to control the business and corporate affairs of Wendy's and its subsidiaries, Defendants owed Wendy's and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage Wendy's and its subsidiaries in a fair, just, honest, and equitable manner. Defendants were and are required to act in furtherance of the best interests of Wendy's and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to Wendy's and its shareholders

the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and its subsidiaries and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

24.    Defendants, because of their positions of control and authority as directors and/or officers of Wendy's, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with Wendy's, each of the Defendants had knowledge of material non-public information regarding the Company.

25.    To discharge their duties, the officers and directors of Wendy's were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company and its subsidiaries. By virtue of such duties, the officers and directors of Wendy's were required to, among other things:

> a. Exercise good faith to ensure that the affairs of the Company and its subsidiaries were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;
>
> b. Exercise good faith to ensure that the Company and its subsidiaries were operated in a diligent, honest and prudent manner and

complied with all applicable federal, foreign and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

c. When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence; and

d. Inform themselves of all material information reasonably available to them prior to making a business decision.

## SUBSTANTIVE ALLEGATIONS

### *Factual Background*

26.     This action arises out of Wendy's failure to join the FFP, which has caused harm to the Company's goodwill and reputation and has thereby resulted and is likely to continue to result in impairment of Wendy's economic performance to the detriment of the Company and its public shareholders. Wendy's is a globally recognized company with more than 6,500 restaurants globally, making a favorable reputation an important part of its business.

27.     The need for the FFP emerged as a result of farm labor exploitation and cases of slavery in Florida's tomato fields, where farm workers were subject to physical abuse such as pistol whippings, involuntary confinement at gunpoint,

abductions, debt bondage, and starvation wages.[8] Some women complained that crew leaders groped them or demanded sex in exchange for steady jobs.[9] At least five slave camps were uncovered in Florida by the founders of the FFP, in which workers received *no pay whatsoever* for their labor. Those who tried to escape risked beatings or worse.[10]

28.     The FFP is an alliance among farmers, farmworkers, major restaurant chains, and retail food companies that ensures humane wages and working conditions for the workers who pick fruits and vegetables on participating farms.[11]

29.     By joining the FFP, food retailers agree to pay a small price premium on the fresh market fruits and vegetables they purchase and to require their farm suppliers to implement a human-rights-based Code of Conduct. Since January 2011, the price premium has led to nearly $20 million in additional income to worker's paychecks.[12]

---

[8] *See* FN 4.

[9] Steven Greenhouse, *In Florida Tomato Fields, a Penny Buys Progress*, N.Y. Times, April 24, 2014, *available at* http://www.nytimes.com/2014/04/25/business/in-florida-tomato-fields-a-penny-buys-progress.html?_r=3 (last accessed Jan. 5, 2017).

[10] Andrew Cockburn, *Trump's Tomatoes*, Harper's Magazine, March 16, 2016, *available at* http://harpers.org/blog/2016/03/trumps-tomatoes/ (last accessed Jan. 5, 2017).

[11] Coalition of Immokalee Workers, *Campaign for Fair Food*, http://www.ciw-online.org/campaign-for-fair-food/ (last accessed Jan. 5, 2017).

[12] Fair Food Standards Council, *Frequently Asked Questions*, http://www.fairfoodstandards.org/resources/frequently-asked-questions/ (last accessed Jan. 5, 2017).

30.   The FFP has achieved tremendous improvements in workplace conditions and wages for farmworkers, due in large part to the participation of major food retailers, causing farms that produce ninety percent of Florida's tomatoes to increase wages for 30,000 workers and follow strict standards with zero tolerance provisions against forced labor, violence and sexual assault, and requirements for, inter alia, rest breaks, shade and protection against pesticide exposure.[13] Indeed, those companies which have already joined the FFP set the tone for industry standards, with Walmart alone selling 20 percent of the nation's fresh tomatoes year-round.[14]

***Wendy's has Purposefully Refused to Join the FFP and Taken Actions Designed to Undermine the Program***

31.   Despite participation by competitors such as McDonalds, Burger King, Subway, KFC, Taco Bell, Pizza Hut, Chipotle, as well as grocery stores like Walmart, Trader Joe's, Whole Foods, and Giant, Wendy's has refused to join the FFP. The Company's refusal to join the FFP has caused its reputation and goodwill among the public to suffer, resulting in protests and boycotts across the country. For example, earlier this year, a protest by hundreds of individuals including Ethel Kennedy (widow of Sen. Robert Kennedy), gathered for a march on Palm Beach

---

[13] *See* FN 10
[14] *See* FN 9.

{00226464;1 }                                    -11-

Island near the vacation home of Defendant Nelson Peltz. [15]

32.     Wendy's refusal to join the FFP is not economically justified. In the fiscal quarter ending July 3, 2016, Wendy's total expenditures on cost of sales totaled over $200 million dollars[16]—*meaning it could have funded the entire FFP since 2011 with one-tenth its cost of sales for one quarter*. To put that number in further perspective, during the same period (2011-2016), Wendy's CEO Brolick earned a total of $33,542,735.[17] That figure is more than it has cost to fund the entire FFP since 2011, which has benefitted tens of thousands of workers.

33.     Despite not joining the FFP, Wendy's began to inform consumers that it did not need to join the program because it was already buying tomatoes from FFP growers—even though Wendy's was not paying the price premium that went directly to the workers, nor had it agreed to buy only from FFP-affiliated

[15]Andres David Lopez, *Hundreds protesting against Wendy's march through Palm Beach,* Palm Beach Daily News, March 12, 2016,
http://www.palmbeachdailynews.com/news/news/local/hundreds-protesting-against-wendys-march-through-p/nqjrM/#sthash.dlo79OhU.dpuf ; *See also* Associated Press, *Farmworkers protest by home of Wendy's billionaire chairman*, March 13, 2016
http://www.sandiegouniontribune.com/sdut-farmworkers-protest-by-home-of-wendys-billionaire-2016mar13-story.html (last accessed on Jan. 5, 2017).

[16] The Wendy's Company, *Form 10-Q Quarterly Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934*,
https://www.sec.gov/Archives/edgar/data/30697/000003069716000016/twc10qq22016.htm (last accessed Jan. 5, 2017).

[17] The Wendy's Company, *Schedule 14A (2014)*,
https://www.sec.gov/Archives/edgar/data/30697/000119312514140701/d667552ddef14a.htm (last accessed Jan. 5, 2017); The Wendy's Company, *Schedule 14A (2016)*,
https://www.sec.gov/Archives/edgar/data/30697/000119312516536551/d121857ddef14a.htm#to c121857_62 (last accessed Jan. 5, 2017).

growers.[18]

34.    Wendy's has not, however, merely refused to join the FFP.  Rather, it

has taken affirmative steps to undermine the Program and its participating growers.

During the 2013-14 Florida tomato season, Wendy's informed those growers

participating in the FFP, from whom the company had been purchasing tomatoes

for years, that it would, specifically to avoid having to participate in the FFP, cease

purchasing Florida tomatoes altogether and replace those purchases with tomatoes

from Mexico.  Wendy's now does not purchase any Florida tomatoes, having

replaced those purchases with tomatoes from suppliers in Mexico, where human

rights abuses are widespread, thereby further threatening the reputation of the

company.[19]

35.    Wendy's turned to Mexican tomato producers such as Bioparques de

Occidente, a farm notorious for subhuman conditions, with workers forced to work

without pay, trapped for months at a time in scorpion-infested camps, often

without beds, fed on scraps, and beaten when they tried to quit. Workers caught

attempting to escape would be forced to return, but bosses would first take their

---

[18] *See* FN 10

[19] *See* FN 10.

shoes and dock them three days' pay. In 2013, Bioparques de Occidente was charged with human trafficking.[20]

36.     Wendy's failure to join the FFP, its decision to source tomatoes abroad, and the corresponding effect on the Company's public image, have resulted in negative consequences to Wendy's economic performance.

37.     Moreover, Wendy's competitors that have joined the FFP have done tremendously well in recent years, due in large part to their favorable public images and goodwill. For example, since joining the FFP in 2005, Yum Brands' stock has risen from approximately $23.41 to $64.42 as of January 6, 2017. In addition, since joining the FFP in 2007, McDonald's stock has risen from approximately $43.89 to $120.76 as of January 6, 2017. In stark contrast, since 2005, Wendy's stock has largely remained stagnant from approximately $12.77 to $13.25 as of January 6, 2017.

38.     By refusing to join the FFP, and by approving or failing to prevent Wendy's abandonment of Florida tomato suppliers in favor of riskier suppliers in Mexico, Wendy's Board has tacitly supported, and continues to support, the human rights violations committed by farmers who produce their tomatoes.[21] In turn, such tacit support has led to a negative impact on the Company's reputation, good will,

---

[20] Richard Marosi, *Desperate Workers on a Mexican Mega-Farm: 'They Treated Us Like Slaves,'* Los Angeles Times, *available at* http://graphics.latimes.com/product-of-mexico-labor/ (last accessed on Jan. 5, 2017).
[21] *See* FN 7

and customer confidence, and has impaired Wendy's economic performance as a result.

*Lack of Proper Corporate Governance Oversight Has Led to Damaging Advertising Incidents*

39.     Further evidence of improper corporate governance emerged on January 4, 2017, when Wendy's official Twitter account tweeted the image of a white supremacist cartoon.[22]

40.     In response to another Twitter user's question as to whether Wendy's had "any memes?" [23] Wendy's responded with an image of Pepe the Frog—an anthropomorphized amphibian used by neo-nazis and white supremacists during the 2016 presidential election—dressed as Wendy, the official mascot for the Company. Pepe the Frog's popularity among white supremacists was so pronounced and pervasive that the Anti-Defamation League named it a hate symbol last Fall, which was widely reported by the media.[24]

---

[22] *Wendy's Tweets, Then Deletes 'Hate Symbol' Meme*, FOX NEWS, Jan. 4, 2017, *available at* http://www.foxnews.com/food-drink/2017/01/04/wendys-tweets-then-deletes-hate-symbol-meme.html (last accessed Jan. 5. 2017).

[23] Merriam-Webster defines "meme" as, "an amusing or interesting picture, video, etc., that is spread widely through the Internet." *Available at* https://www.merriam-webster.com/dictionary/meme (last accessed on January 5, 2017).

[24] Travis M. Andrews, *Once-Comic Pepe the Frog Has Beed Declared a Hate Symbol*, WASH. POST, Sept. 28, 2016, *available at* https://www.washingtonpost.com/news/morning-mix/wp/2016/09/28/once-comic-pepe-the-frog-has-been-declared-a-hate-symbol/?utm_term=.e9213b554d50 (last accessed Jan. 5, 2017).

41.     Popular white supremacist websites are now labeling Wendy's the "official burger of the Neo-Nazi Alt-Right movement." The Company is now facing backlash and outrage from the public as a result.

42.     This lack of oversight, or serious lapse of judgment, demonstrates that the Board's corporate governance structure is in dire need of reformation.

## DERIVATIVE AND DEMAND ALLEGATIONS

43.     Plaintiff brings this action derivatively in the right and for the benefit of Wendy's to redress the breaches of fiduciary duties by the Individual Defendants.

44.     Plaintiff will adequately and fairly represent the interests of Wendy's and its shareholders in enforcing and prosecuting its rights.

45.     For the reasons set out below, Plaintiff believes a litigation demand would be futile.

46.     On August 17, 2016, as a result of the Board's failure to join the FFP as set forth above, Plaintiff, by his undersigned counsel, sent the Wendy's Board a books and records demand letter (the "Books and Records Demand") in order to investigate potential misconduct by the Board.

47.     On August 30, 2016, Theodore M. Grossman, Esq. of Jones Day, counsel for the Company, responded to Plaintiff's Books and Records Demand. Mr. Grossman requested account or brokerage information establishing Plaintiff's

ownership of Wendy's stock, claiming that the unsworn letter of Plaintiff's financial advisor attached to the Books and Records Demand was insufficient.

48.    On September 2, 2016, Plaintiff's counsel sent Mr. Grossman a redacted copy of Plaintiff's brokerage statement for the period July 1, 2016 to July 31, 2016.

49.    On September 6, 2016, Mr. Grossman responded to Plaintiff's September 2 letter, again claiming the brokerage statement was insufficient proof of ownership and requesting a "more up-to-date" brokerage statement. Plaintiff's counsel responded the following day with the information requested.

50.    On September 13, 2016, Mr. Grossman continued this pattern of delay by requesting a lengthy list of additional information regarding Plaintiff's involvement in farm labor causes, including the FFP.

51.    On the same day, Plaintiff's counsel sent Mr. Grossman a proposed Agreement Governing the Production of Confidential Material. Despite the offer to enter into a confidentiality agreement, Plaintiff has still not been granted access to the books and records requested.

52.    The above series of communications demonstrate a clear effort to repeatedly delay in responding to Plaintiff's Books and Records Demand and effectively deny him his right as a stockholder to inspect Wendy's corporate books and records.

53.    Given the Board's failure to even allow Plaintiff access to the documents requested in the Books and Records Demand, it is apparent that a demand that the Board initiate action to redress the harm to Wendy's resulting from the Company's failure to join the FFP would be futile. Thus, Plaintiff has been left with no other recourse than filing this action.

## COUNT 1

**Against the Individual Defendants for Breach of Fiduciary Duties**

54.    Plaintiff repeats and re-alleges each and every preceding allegation as if fully set forth herein.

55.    The Individual Defendants owe Wendy's and its shareholders fiduciary obligations. By reason of their fiduciary relationship with the Company, the Individual Defendants specifically owe Wendy's and its shareholders the highest degree of good faith, fair dealing, and loyalty.

56.    The Individual Defendants have a fiduciary duty to ensure that the Company is operated in a diligent, honest, and prudent manner.

57.    The Individual Defendants breached their fiduciary duties by failing to join the FFP, despite all of Wendy's major competitors doing so (thereby flouting industry standards) and despite pressure from the public, resulting in harm to the Company's goodwill and reputation, which in turn had a negative impact on Wendy's economic performance.

58.     Based on the foregoing, the Board was not acting in good faith toward the Company and breached their fiduciary duties.

59.     As a direct and proximate result of the Board's conscious failure to perform their fiduciary obligations, Wendy's has been and will be damaged. The Company's reputation and corporate image in the business community, courts, and financial markets, as well as any goodwill it may have left, have been irreparably tarnished.

60.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

61.     Plaintiff, on behalf of Wendy's, has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

a.      Declaring that the Individual Defendants have breached their fiduciary duties to Wendy's and its shareholders;

b.      Declaring that Plaintiff may maintain this action on behalf of Wendy's and that Plaintiff is an adequate representative of the Company;

c.      Determining that this action is a proper derivative action maintainable under law and demand is excused;

       d.     Determining and awarding to Wendy's the damages sustained it as a result of the violations set forth above from the Individual Defendants, with interest thereon;

       e.     Directing Wendy's to join the FFP;

       f.     Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, costs, and expenses; and

       g.     Granting such other and further relief as this Court deems just and equitable.

Dated: January 9, 2017

                                            Gustavo Bruckner
                                          POMERANTZ LLP
                                          600 Third Avenue
                                          New York, NY 10016
                                          (212) 661-1100

                                          *Attorneys for Plaintiff*

## VERIFICATION FOR AMENDED COMPLAINT

I, Samuel B. Trickey, under pain and penalty of perjury under the laws of the United States, hereby verify that as a Plaintiff in this shareholder derivative action, I was a The Wendy's Company shareholder during all of the relevant times that the events alleged to have taken place in this Amended Complaint occurred. Also, I continue to hold my shares. I believe the factual allegations in the Amended Complaint are true and correct to the best of my knowledge, information, and belief. Having received a copy of the Amended Complaint, having reviewed it with my Counsel, I hereby authorize its filing.

Date: January 05, 2017

Samuel B. Trickey

{00215526;1 }