```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
SAMUEL B. TRICKEY,                                                :
                                                                  :
                                   Plaintiff,                     :       16 Civ. 7789 (PAE)
                                                                  :
                       -v-                                        :       OPINION & ORDER
                                                                  :
EMIL J. BROLICK, JANET HILL, JOSEPH A. LEVATO,                   :
MICHELLE J. MATHEWS-SPRADLIN, PETER W.                            :
MAY, MATTHEW PELTZ, NELSON PELTZ, TODD A.                         :
PENEGOR, PETER H. ROTHSCHILD, and ARTHUR B.                       :
WINKLEBLACK,                                                      :
                                                                  :
                                   Defendants,                    :
                                                                  :
        -and-                                                     :
                                                                  :
THE WENDY'S COMPANY,                                              :
                                   Nominal Defendant              :
                                                                  :
------------------------------------------------------------------X
```

PAUL A. ENGELMAYER, District Judge:

Plaintiff Samuel B. Trickey ("Trickey" or "Plaintiff"), a shareholder of The Wendy's Company ("Wendy's" or "the Company"), brings this derivative action on behalf of Wendy's against 10 of the Company's 11 members of the Board of Directors (the "Board"). Trickey claims that the Board breached its fiduciary duty to the Company by declining to cause Wendy's to join an industry alliance between farms and food retailers called the Fair Food Program ("FFP"). Pending before the Court is defendants' motion, Dkt. 20, to dismiss Trickey's Verified First Amended Shareholder Derivative Complaint (the "FAC"), Dkt. 18, for failure to plead either a demand on the Board or demand futility, as required by Federal Rule of Civil Procedure 23.1. For the reasons that follow, the motion to dismiss is granted.

I.      **Background**

A. **Factual Background**[1]

1. **The Parties**

Trickey, a citizen of Florida, is and has been a shareholder of Wendy's at all relevant times. FAC ¶ 8.

Nominal Defendant Wendy's is a fast food company with over 6,500 restaurants across the globe. Wendy's is a corporation organized under Delaware law, with its principal executive offices located in Dublin, Ohio. *Id.* ¶ 9.

Defendants Emil J. Brolick, Janet Hill, Joseph A. Levato, Michelle J. Mathews-Spradlin, Peter W. May, Matthew Peltz, Nelson Peltz, Todd A. Penegor, Peter H. Rothschild, and Arthur B. Winkleblack comprise 10 of the 11 members of the Wendy's Board. *Id.* ¶¶ 10–19. (The FAC dropped claims against the 11th Board member, Dennis M. Kass, after defendants moved, Dkt. 9, to dismiss the initial complaint on the ground that Kass's presence in the case destroyed diversity jurisdiction.)

2. **The FFP**

The FFP is an "alliance among farmers, farmworkers, major restaurant chains, and retail food companies that ensures humane wages and working conditions" for farmworkers. *Id.* ¶ 28. The FFP was formed in response to cases of abuse and slavery found on Florida tomato fields. *Id.* ¶ 27. Food retailers participating in the FFP pay a price premium on produce purchased from

---

[1] The facts related herein are drawn primarily from the FAC, Dkt. 18. The Court accepts all well-pled factual allegations in the FAC as true and draws all reasonable inferences in Trickey's favor. *See F5 Capital v. Pappas*, 856 F.3d 61, 83 (2d Cir. 2017) ("Although there is a heightened burden under Rule 23.1 to plead particularized facts, when a motion to dismiss for failure to make a demand is made, all reasonable inferences from the pled facts must nonetheless be drawn in favor of the plaintiff in determining whether the plaintiff has met its burden." (internal quotation marks and alteration omitted)).

FFP growers, who in turn agree to implement certain human rights standards and to increase wages for farm workers. *Id.* ¶ 4.

The FFP has been "tremendously successful" in improving farm worker conditions and wages. *Id.* It has gained "widespread participation" from major food retailers including McDonald's, Burger King, Subway, KFC, Taco Bell, Pizza Hut, and Chipotle, and grocery stores including Walmart, Trader Joe's, and Whole Foods. *Id.* ¶¶ 3, 31.

### 3. Wendy's Non-Participation in the FFP

The FAC alleges that "Wendy's has refused to join the FFP." *Id.* ¶ 31. The FAC does not state when or how Wendy's made the decision not to join the FFP. Nor does the FAC state whether or how any members of Wendy's Board participated in any such decision.

The FAC also alleges that Wendy's has (a) informed consumers that it did not need to join the FFP because it already bought its tomatoes from FFP growers, and (b) informed FFP growers that that it would purchase its tomatoes elsewhere in order to avoid FFP participation, thereby taking "affirmative steps to undermine" the FFP. *Id.* ¶¶ 33–34. The FAC does not state how Wendy's made these notifications or who made the decision to communicate them. The FAC does not allege that the Board was involved in these communications.

The FAC alleges that, by not participating in the FFP, Wendy's is "flouting what has become a de facto industry norm." *Id.* ¶ 3. It alleges that Wendy's decision not to participate in the FFP is "not economically justified" because the cost of funding the entire FFP from 2011 to the present is equivalent to about one-tenth of Wendy's cost of sales for the quarter ending July 3, 2016, and is less than the compensation that defendant Brolick, Wendy's CEO as well as a Board member, made between 2011 and 2016. *Id.* ¶ 32.

The FAC alleges that Wendy's failure to participate in the FFP has led to protests and boycotts of the company, harming the Company financially. *Id.* ¶ 26. It alleges that, "by

3

approving or failing to prevent Wendy's abandonment of Florida tomato suppliers," the Board has "tacitly supported . . . the human rights violations committed by farmers who produce their tomatoes [in Mexico]," *id.* ¶ 38, and that this has caused "irreparabl[e]," damage, *id.* ¶ 59, to the Company's "reputation and goodwill," *id.* ¶ 31. The FAC states that Wendy's stock has stayed relatively stagnant from 2005–2017, whereas competing fast food chains' stock prices have risen during this same period. Without elaborating on this theory of causation, the FAC attributes the Company's lack of stock-price appreciation to its failure to participate in the FFP. *Id.* ¶ 37.[2]

### 4. Trickey's Books and Records Request

On August 17, 2016, Trickey sent a books and records request to the Board "in order to investigate potential misconduct" as it pertained to the FFP. *Id.* ¶ 46.

On August 30, 2016, Theodore Grossman ("Grossman"), Wendy's outside counsel, responded with a request for proof of Trickey's status as a shareholder, stating that the unsworn letter that Trickey's financial advisor had provided was insufficient. *Id.* ¶ 47.

On September 2, 2016, Trickey's counsel sent Grossman a redacted copy of Trickey's brokerage statement for July 2016. On September 6, 2016, Grossman responded, requesting a more current statement. *Id.* ¶¶ 48–49. On September 7, 2016, Trickey's counsel sent updated information. On September 13, 2016, Grossman requested "a lengthy list of additional information regarding Plaintiff's involvement in farm labor causes, including the FFP." *Id.* ¶¶ 49–50. The FAC does not state precisely what information Grossman requested, whether or not

---

[2] As "[f]urther evidence of improper corporate governance," the FAC alleges that there was a tweet from Wendy's official Twitter account on January 4, 2017, that featured the image of "Pepe the Frog," which has come to be associated with white supremacists. *Id.* ¶ 39. The tweet was deleted soon after it was posted, but the FAC claims it caused Wendy's to face additional backlash and to be labeled the "official burger of the Neo-Nazi Alt-Right movement" by white supremacist websites. *Id.* ¶ 41. The FAC does not allege that the Board had any control over the Company's Twitter account or role in the tweet or that the tweet is related to Wendy's non-participation in the FPP.

Trickey provided the information sought and if not, why not; but it states that, on September 13, 2016, Trickey's counsel sent Grossman a proposed confidentiality agreement. *Id.* ¶ 51. The FAC alleges that, as its of filing, Trickey had not been given access to the Company's books and records. *Id.* ¶ 53.

### B. Procedural History

On October 5, 2016, Trickey filed the initial complaint in this action. It brought claims of a breach of fiduciary duty against all 11 members of Wendy's Board. Jurisdiction was based diversity of citizenship, 28 U.S.C. § 1332(a)(3). Dkt. 1.

On December 19, 2016, defendants moved to dismiss under Fed. R. Civ. P. 12(b)(1), Dkt. 9, on the grounds that diversity jurisdiction is lacking, because both Trickey and defendant Kass are citizens of Florida, *see* Dkt. 10. On January 10, 2017, Trickey filed the FAC, which dropped Kass as a defendant. Dkt. 18.

On January 30, 2017, defendants filed the instant motion to dismiss the FAC, Dkt. 20, and a supporting memorandum of law, Dkt. 21 ("Def. Br."). On February 15, 2017, Trickey filed a memorandum of law in opposition. Dkt. 26 ("Pl. Opp. Br."). On February 22, 2017, defendants filed a reply ("Def. Rep. Br."). Dkt. 27.

## II. Applicable Legal Standards

"A shareholder's right to 'prosecute a derivative suit is limited to situations where the [shareholder] has demanded that the directors pursue the corporate claim and they have wrongfully refused to do so or where demand is excused because the directors are incapable of making an impartial decision regarding such litigation.'" *In re Goldman Sachs Mortg. Servicing S'holder Derivative Litig.*, 42 F. Supp. 3d 473, 480 (S.D.N.Y. 2012) (quoting *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993)). Where, as here, the corporation at issue is a Delaware

corporation, the issue of whether demand is excused is governed by Delaware law. *Id.*; *see also Rahbari v. Oros*, 732 F. Supp. 2d 367, 376 (S.D.N.Y. 2010).

Under Federal Rule of Civil Procedure 23.1, heightened pleading requirements apply for plaintiffs bringing shareholder derivative lawsuits. "By its very nature the derivative action impinges on the managerial freedom of directors," *In re Am. Int'l Grp., Inc. Derivative Litig.*, 700 F. Supp. 2d 419, 430 (S.D.N.Y. 2010), *aff'd*, 415 F. App'x 285 (2d Cir. 2011) (quoting *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)). For this reason, Rule 23.1 requires that a plaintiff either make a litigation demand on the board of directors to take certain action, or plead with sufficient particularity the reasons why such a demand would be futile, *In re Am. Int'l Grp., Inc. Derivative Litig.*, 700 F. Supp. 2d at 430.

The particularity required by Rule 23.1 "is not satisfied by conclusory statements or mere notice pleading." *In re Am. Int'l Grp., Inc. Derivative Litig.*, 700 F. Supp. 2d at 430 (citations omitted). Rule 23.1 requires a plaintiff to plead particularized allegations on a "detailed, fact-intensive, director-by-director" basis. *See Postorivo v. AG Paintball Holdings, Inc.*, No. Civ. A. 2991 (VCP), 2008 WL 553205, at *7 (Del. Ch. Feb. 29, 2008).

### III. Discussion

Defendants seek dismissal on the ground that the FAC fails to plead either that Trickey made a pre-suit demand on Wendy's Board that it file a breach of fiduciary duty lawsuit based on Wendy's failure to join the FPP, or the futility of such a demand, as required by Rule 23.1. Trickey concedes that he never made a demand upon the Board. However, he argues, a demand would necessarily have been futile, as revealed by the fact that he did not receive documents in response to his books and records request. FAC ¶ 53.

6

As reviewed below, depending on the circumstances, courts applying Delaware law analyze demand futility under one of two tests: the "*Rales* test," derived from *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993), or the "*Aronson* test," derived from *Aronson v. Lewis*, 473 A.2d 805, 813 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). The choice between the tests turns on whether the complaint challenges a "conscious decision" by the Board. For the reasons that follow, the Court holds that the *Rales* test applies here; and that, under either test, the FAC does not adequately plead demand futility.

### A. The *Rales* and *Aronson* Tests

Courts apply the *Rales* test "where the subject of the derivative suit is not a business decision of the board," but where the suit instead challenge to board inaction and/or decisions by other corporate actors. *Rales*, 634 A.2d at 934. The *Rales* test asks whether the complaint raises "a reasonable doubt that a majority of the Board would be disinterested or independent in making a decision on a demand." *Id.* at 930.

Conversely, courts apply the *Aronson* test where the subject of the derivative suit is a "director action," which must be a "conscious decision," *Aronson*, 473 A.2d at 813, although "conscious conduct includes a conscious decision to refrain from acting," *In re Am. Int'l Grp., Inc. Derivative Litig.*, 700 F. Supp. 2d at 430. The *Aronson* test asks whether the complaint "plead[s] particularized facts that create a reasonable doubt that 1) the directors are disinterested and independent, *or* that 2) the challenged transaction was a valid exercise of business judgment." *Id.* (citing *In re Morgan Stanley Derivative Litig.*, 542 F. Supp. 2d 317, 321–22 (S.D.N.Y. 2008)) (emphasis added). To apply *Aronson*, the court must therefore find that the complaint pleads sufficient facts "to perform the essential inquiry contemplated by *Aronson*—

whether the directors have acted in conformity with the business judgment rule in approving the challenged transaction." *In re Am. Int'l Grp., Inc. Derivative Litig.*, 700 F. Supp. 2d at 430.

Here, Trickey's FAC does not allege a conscious Board decision capable of supporting an *Aronson* inquiry. The FAC does not allege whether the decision whether to participate in the FPP ever was ever put before the Board; what, if any, information regarding the FFP was ever presented to the Board; and what, if any, decisions were ever made or actions taken by the Board regarding the FFP. On the contrary, the FAC persistently alleges that "Wendy's"—without any specification of Board involvement—has "refused to join the FFP," FAC ¶ 31, and that "Wendy's"—again, with no reference to the Board—has "fail[ed] to join the FFP," *id.* ¶¶ 1, 5. The FAC makes only the conclusory claim that the 10 defendants, by virtue of their positions on the Board, "were able to and did, directly *and/or indirectly*, exercise control over the wrongful acts complained of herein." *Id.* ¶ 24 (emphasis added). But vague allegations of indirect control are a far cry from the allegations the *Aronson* test requires of a "conscious" Board decision. *Cf. In re Am. Int'l Grp., Inc. Derivative Litig.*, 700 F. Supp. 2d at 431 (applying *Aronson* where complaint brought challenges to "the Board's decisions to increase the dividend and repurchase shares, as well as to all of the Board's challenged compensation-related decisions").

In opposing the motion to dismiss, Trickey asks the Court to infer that Wendy's Board must have made a conscious decision not to join the FFP on several grounds: because "certainly" competitors' FFP participation "did not escape the notice of the Board"; because protests over Wendy's failure to participate "*would have* put the Board on notice that its customers wanted the Company to join the program"; and because Trickey's own books and records demand elevated the issue and put the Board on notice "that joining the FFP was important" to shareholders. Pl. Opp. Br. at 10 (emphasis added). These speculative assertions do not appear in the FAC. Even

8

if they had, they would not suffice to trigger the *Aronson* test. They do not identify any specific action or decision by the Board, or allege a conscious choice by the Board not to join the FPP. At most, they would support a generalized inference of background awareness by members of the Board of the FFP issue.

Accordingly, the *Rales* test governs the claim here of demand futility. *See In re Morgan Stanley Derivative Litig.*, 542 F. Supp. 2d at 322 (applying *Rales* where "isolated and conclusory references" to board's failure to disclose information were insufficient to trigger *Aronson* test); *IAC/InterActiveCorp. Sec. Litig.*, 478 F. Supp. 2d 574, 596 (S.D.N.Y. 2007) (applying *Rales* where complaint alleged that board allowed misleading financial prospects to reach the public but failed to "challenge a particular business decision made by the board as a whole"); *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995) (applying *Rales* where complaint alleged that board failed to prevent misrepresentations but did "not challenge any specific board action that approved or ratified these alleged wrongdoings"); *Fink v. Weill*, No. 02 Civ. 10250 (LTS) (RLE), 2005 WL 2298224, at *3 (S.D.N.Y. Sept. 19, 2005) (applying *Rales* where complaint alleged that board "fail[ed] to act" to prevent fraudulent transactions).

**B.     Application of the *Rales* Test**

Under *Rales*, the FAC must raise "a reasonable doubt that a majority of the Board would be disinterested or independent in making a decision on a demand." *Id.* at 930. "A director is considered to be interested where the director is positioned to receive a personal financial benefit from a transaction that would not be equally shared by the corporation or shareholders or where a transaction would be materially detrimental to the director but not to the corporation or shareholders." *Fink*, 2005 WL 2298224, at *3. A director is considered not independent where

9

the director's decisions are not "based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Aronson*, 473 A.2d at 816.

Here, the FAC lacks the "factually intensive, director-by-director analysis" necessary to demonstrate demand futility under *Rales*. *Postorivo v. AG Paintball Holdings, Inc.*, No. Civ. A. 2991 (VCP), 2008 WL 553205, at *6 (Del. Ch. Feb. 29, 2008). The FAC does not allege any particularized facts establishing that any member of the Board, let alone a majority, was interested or lacked independence, for any reason, with respect to participation in the FFP. On the contrary, the FAC does not contain any concrete allegations regarding any individual Board member.

To the extent the FAC implies that Board members were incapable of being independent or disinterested because Trickey proposed to sue them for breach of fiduciary duty, that, too, fails to satisfy *Rales*. "A reasonable doubt as to disinterestedness" can be shown if a plaintiffs' "particularized allegations, construed as true, demonstrate a 'substantial likelihood' of Defendants' personal liability." *In re Morgan Stanley Derivative Litig.*, 542 F. Supp. 2d at 323 (quoting *Rales*, 634 A.2d at 936). But "demand will be excused based on a possibility of personal director liability only in the *rare case* when a plaintiff is able to show director conduct that is 'so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists,'" *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 121 (Del. Ch. 2009) (quoting *Aronson*, 473 A.2d at 815) (emphasis added). "Demand is not excused solely because the directors would be deciding to sue themselves." *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d at 121. This is not such a "rare case." Whatever judgments might be made about the underlying FFP issue, the lapse the FAC alleges—not causing Wendy's to participate in a specific human rights initiative—is not

"so egregious on its face" that it "cannot meet the test of business judgment" and give rise to "a substantial likelihood of director liability." *Id.* at 121.

The FAC separately asserts that the futility of a demand is "apparent" because Wendy's, allegedly, improperly spurned Trickey's books and records request. FAC ¶ 53. At the outset, the FAC's allegations as to this request fall short of clearly alleging that Wendy's acted improperly with respect to that request. The FAC does not allege that, after Wendy's outside counsel requested additional information from Trickey on September 13, 2016, that Trickey either met or objected to this request. *Id.* ¶ 50. It does not allege that Trickey continued to pursue the books and records demand. It does not allege that Trickey attempted to pursue this request through a books and records action in Delaware, as was his right as a shareholder. Moreover, even if Wendy's was in the wrong in not making books and records available to Trickey, the FAC does not plead facts that make the Board responsible for that lapse. While the FAC references Wendy's outside counsel—who presumably reports to the company's in-house legal officers—the FAC does not contain any allegations that any Board member (let alone a majority) participated in, or was even aware of, the Company' response to the records request.

Accordingly, the FAC fails to allege demand futility under *Rales*. It does not plead the required "particularized facts that could support a reasonable inference that the . . . board could not have exercised its independent and disinterested business judgment in responding to a demand challenging" its non-participated in the FFP. *Higher Educ. Mgmt. Grp., Inc. v. Mathews*, No. Civ. A. 9110 (VCP), 2014 WL 5573325, at *12 (Del. Ch. Nov. 3, 2014).

C.  **Application of the *Aronson* Test**

Even if the *Aronson* test applied, *i.e.*, even if there were a basis to assume a conscious Board decision regarding participation in the FFP, the FAC would still fail to plead demand

11

futility. That test asks whether a complaint pleads particularized facts creating a reasonable doubt as to *either* the Board's disinterestedness and independence *or* its valid exercise of business judgment. *See In re Am. Int'l Grp., Inc. Derivative Litig.*, 700 F. Supp. 2d at 430; *In re Morgan Stanley Derivative Litig.*, 542 F. Supp. 2d at 321–22. For the reasons above, the FAC does not allege facts giving rise to a reasonable doubt as to disinterestedness or independence. Nor does it plead facts giving rise to a reasonable doubt about whether Wendy's non-participation in the FFP fell outside the broad ambit of permissible business judgment.

"To demonstrate demand futility under the second prong of *Aronson*, 'a plaintiff must plead specific facts to overcome the powerful presumptions of the business judgment rule,'" which "'protects decisions unless they cannot be attributed to any rational business purpose.'" *In re Goldman Sachs Mortg. Servicing S'holder Derivative Litig.*, 42 F. Supp. 3d at 486 (quoting *In re INFOUSA, Inc. Shareholders Litig.*, 953 A.2d 963, 972 (Del. Ch. 2007) (internal quotation marks omitted)). "'Specifically, the plaintiffs must plead particularized facts sufficient to raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision.'" *In re Goldman Sachs Mortg. Servicing S'holder Derivative Litig.*, 42 F. Supp. 3d at 486 (quoting *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 824 (Del. Ch. 2005)). Because "a different rule—one that permitted an 'objective' evaluation of [a Board's] decision—would expose directors to substantive second guessing by ill-equipped judges or juries, which would, in the long-run, be injurious to investor interests," Delaware courts have held that

> whether a judge or jury considering the matter after the fact, believes a decision substantively wrong, or degrees of wrong extending through "stupid" to "egregious" or "irrational", provides no ground for director liability, so long as the court determines that the process employed was either rational or employed in a good faith effort to advance corporate interests.

*In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).

Here, the FAC does not make any factual allegations shedding light on the Board's ostensible decision not to participate in the FFP. The FAC is "devoid of particularized factual allegations that any of the defendants acted in bad faith or were not adequately informed" when making that decision. *In re Goldman Sachs Mortg. Servicing S'holder Derivative Litig.*, 42 F. Supp. 3d at 486–87. Given its threadbare pleadings as to these ingredients, the FAC effectively disables the Court from finding that the Board's decision not to participate in the program was reached through an irrational process or one employed other than in a "good faith effort to advance corporate interests." *Caremark*, 698 A.2d at 967. The FAC is also silent as to the data before the Board or the Board's reasons for not deciding not to participate in the FFP program. With such centrally relevant information missing, the FAC effectively makes it impossible to conclude, substantively, that the Board's decision was outside the wide bounds of defensible business judgment.

Quite the contrary, the FAC supplies a facially defensible justification for Wendy's not to participate: Doing so imposed a price premium. To be sure, the FAC alleges that this premium was modest and was more than offset by the harm (including economic) Wendy's experienced from not participating. *See* FAC ¶¶ 6, 32. But such assessments are quintessential matters of business judgment—implicating considerations not only of pricing, but also of public relations, consumer preferences, branding, and others. And business judgment is not to be viewed through hindsight assessment of how a decision played out: A court may not engage in "judicial second guessing of [a] decision if the directors employed a rational process and considered all material information reasonably available—a standard measured by concepts of gross negligence." *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d at 122 (citing *In re Caremark Intern. Inc.*

13

*Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996); *Brehm v. Eisner*, 746 A.2d 244, 259 (Del. 2000)). The FAC does not adequately plead the contrary here.

Accordingly, the Court holds, the FAC does not allege demand futility as required by Rule 23.1, whether analyzed under the *Aronson* standard or the *Rales* standard.

## CONCLUSION

For the reasons above, the Court grants defendants' motion to dismiss the FAC. The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 20 and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: July 11, 2017
New York, New York